UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

CadleRock Joint Venture, L.P.,

                                Plaintiff

Case No. 02-16012, 02-16019 and 02-16022

-vs-

Order

Royal Indemnity Company,

                                Defendant

The above-referenced cases were part of a multidistrict litigation proceeding consolidated before this Court for pretrial purposes pursuant to 28 U.S.C. § 1407. These three cases are scheduled for consolidated jury trial proceedings commencing on February 21, 2012. *See* Trial Order issued November 23, 2011, 02-16012, Doc. 113. The Trial Order required the parties to file any motions in limine on or before January 5, 2012.[1] Pursuant to the Trial Order, the parties filed multiple motions in limine, which have been fully briefed and now are ripe for decision.

These actions arise from lease bonds issued by Royal to Commercial Money Center, Inc. ("CMC"), relating to equipment leases originated by CMC. CadleRock, the plaintiff in these actions, has succeeded to CMC's interests in the lease bonds through a series of assignments. As the current obligee, CadleRock seeks to recover against Royal on the lease bonds.

Royal has denied liability to CadleRock on the lease bonds, and has asserted an affirmative defense based upon alleged fraudulent material misrepresentations and concealment of facts by CMC and its principals. Royal argues that CMC's fraud renders the lease bonds void,

---

[1] Due to a typographical error, the Trial Order actually provided that the date for filing motions in limine was January 15, 2012. However, the Court stated the correct date during a telephone conference on the record on November 21, 2011. All parties filed motions in limine on January 5, 2012.

1

and seeks rescission of its bonds.[2]

Familiarity with the complex factual background of these cases is assumed. For detailed factual background, the Court refers the reader to the two bench trial opinions previously issued in these and related cases. (02-16000, Doc. 2459; 02-16014, Doc. 131)(collectively, the "Bench Trial Opinions").[3]

These actions are presently before the Court on motion of Royal Indemnity Company ("Royal") for an Order declaring that California law governs all substantive issues to be tried in these cases as to CadleRock's claims, Royal's affirmative defenses, Royal's counterclaims and Royal's third party claims (02-16012, Doc. 115; 02-16019, Doc. 90; 02-16022, Doc. 98)("Choice of Law Motion").

For the reasons set forth herein, Royal's Choice of Law Motion is granted in part and denied in part. The portion of Royal's Choice of Law Motion relating to (1) CadleRock's contract claims against Royal; and (2) Royal's rescission counterclaims against CadleRock, is granted. The portion of Royal's Choice of Law Motion relating to Royal's counterclaims against Guardian Capital IX, LLC; Guardian Capital XV, LLC; and Diversity Capital II, LLC (collectively, the "Guardian Entities") is denied as moot, inasmuch as Royal has dismissed all its claims against the Guardian Entities. The portion of Royal's Choice of Law Motion relating to Royal's third-party claim against Blaine Tanner is denied. For the reasons set forth herein, the Court finds that Ohio law governs Royal's third-party claim against Tanner for aiding and abetting CMC's alleged fraud.

---

[2] Royal has asserted counterclaims for rescission and recovery of certain payments made under reservation of rights. Royal also has a third-party claim against Blaine Tanner for aiding and abetting the fraud of CMC. That claim, for which Royal is also the plaintiff and bears the burden of proof, is largely coextensive with Royal's affirmative defense of fraud in the inducement.

[3] Where not defined herein, capitalized terms used in this Opinion have the meanings ascribed to them in the Bench Trial Opinions, as applicable.

## DISCUSSION

In its Choice of Law Motion, Royal asserts that the Court consistently has applied California law to various issues in these cases, and that it should continue to do so with respect to the issues remaining for trial. Royal notes that the Court first applied California law to interpret the terms of the lease bonds in the Lead Opinion, issued in August 2005 (02-16000, Doc. 1708). In discussing the applicability of California law to interpreting the lease bond provisions in these cases, the Lead Opinion stated:

> With respect to the Ohio Lender Bank transactions, no party to these cases has indicated to the Court that the conflict of laws issue makes a material difference in the Court's analysis. *** To the extent that the Court must determine the law applicable to the Ohio Lender Banks' dispute at this stage of the proceedings, however, it appears that California law should apply here as well.
>
> Although the majority of the Banks' contacts with Guardian may have taken place in Ohio, the Court believes that the relevant contacts between Guardian and the Sureties took place in California. The Ohio Banks were not party to the Surety Contracts; the Banks merely received assignments of rights under those contracts, and the Banks were aware at the time they took assignments from Guardian that the contracts had been negotiated and executed elsewhere. The provision [in the lease bonds] that "jurisdiction . . . shall rest in the state of the Obligee," even assuming that a bank might qualify as an obligee, is not a choice of law provision, and it does not change the result.

Lead Opinion, 02-16000, Doc. 1708, at 14-15.

Royal also cites the Court's March 11, 2009 Opinion, which granted summary judgment on several of CadleRock's claims (02-16000, Doc. 2214)("March, 2009, Summary Judgment Opinion"). In the March, 2009, Summary Judgment Opinion, the Court applied California law not only to CadleRock's contract claims, but to the claims for fraudulent/negligent

3

misrepresentation and fraudulent inducement. (02-16000, Doc. 2214, at 54).[4]

In arguing that the reasoning of the Lead Opinion, as well as the March, 2009, Summary Judgment Opinion, controls here, Royal relies on various facts, including (1) the California location of CMC's employees, senior management, and operations; (2) the bulk of CMC's communications with the banks and sureties originated from California; (3) the leases were serviced in California; (4) the Sureties' agent, Anthony & Morgan Surety & Insurance Services, Inc. ("A&M") was based in California; and (5) Royal issued and caused the bonds to be executed in California. Royal also contends CMC committed the acts constituting fraud in the inducement in California. Royal thus argues that California provides the substantive law governing burden of proof and the rules of decision in this trial.

In its memorandum in opposition (02-16012, Doc. 134), CadleRock indicates that it does not dispute the application of California substantive law to its contract claim against Royal and Royal's affirmative defense and counterclaim based on fraudulent inducement.[5] Accordingly, as relates to the claims between Royal and CadleRock, it appears that no choice of law issues remain for Court determination, and the Court will not further address choice of law issues relating to CadleRock's claims.

Third-party defendant Blaine Tanner also has filed a memorandum in opposition (02-

---

[4] Royal also observes that the Court made a substantially similar finding in an Opinion issued in April 2009, in a related case involving JPMorgan Chase Bank, N.A., successor to Bank One, N.A. ("Bank One") and Safeco Insurance Company of America ("Safeco")(02-16014, Doc. 52)(the "April 2009 Summary Judgment Opinion"). In the April 2009 Summary Judgment Opinion, the Court found that "Safeco's counterclaim for rescission of the Safeco bonds is subject to the same contractual choice of law analysis as that previously conducted by the Court in its opinion on the motions for judgment on the pleadings . . . . Accordingly, the choice of law analysis conducted by the Court in its opinion on the motions for judgment on the pleadings, in relation to the Banks' contractual claims on the surety bonds, is equally applicable to the issues presented by Safeco's counterclaim for rescission of the bonds . . . ." (02-16014, Doc. 52, at 15, 16).

[5] It is unclear from CadleRock's memorandum of law whether it disputes the application of California law to its purported "estoppel defense" to Royal's rescission claim. That issue is moot, however, since, on February 10, 2012, the Court issued its Order on Royal's Motion in Limine 2 (02-16012, Doc. 176), which found that CadleRock was precluded from introducing evidence, or advancing arguments, in support of its estoppel defense.

16012, Doc. 143) to Royal's Choice of Law Motion, arguing that Ohio law applies to Royal's third party tort claim against Blaine Tanner for aiding and abetting CMC's fraud.[6] Tanner argues that he was not a party to any of the lease bond transactions. Thus, he asserts, the Court's previous findings as to the substantive law governing the lease bond contracts are not controlling with respect to the tort claims against him.

Tanner points out that each of the prior choice of law opinions cited by Royal rendered a determination with respect to the law governing contractual claims, not tort claims. In arguing that Royal's tort claims compel a different analysis, Tanner relies on Ohio tort choice of law rules, as summarized in this Court's March, 2009, Summary Judgment Opinion.[7]

Relying on the factors articulated in the March, 2009, Summary Judgment Opinion, Tanner points out that (1) he resided in Ohio at all relevant times; (2) the location of his alleged conduct was Ohio; (3) Royal is domiciled in North Carolina, not California; and (4) Tanner executed agreements on behalf of the Guardian Entities in Ohio. Thus, Tanner argues, with respect to tortious conduct alleged against Tanner—which does not arise from the provisions of the lease bonds themselves—Ohio provides the proper source of the governing law. Tanner also points to the policy considerations outlined in the Restatement of Conflict of Laws, and notes that Ohio has a far more significant interest than California in regulating the conduct of Ohio citizens.

In its reply memorandum of law (02-16012, Doc. 155), Royal focuses on the Court's statement, in the Lead Opinion, that "the relevant contacts between Guardian and the Sureties

---

[6] Royal has dismissed its third-party claims against Guardian Capital IX, LLC; Guardian Capital XV, LLC; and Diversity Capital II, LLC (collectively, the "Guardian Entities"), as well as its third-party claim against Tanner for conspiracy. Accordingly, the only claim as to which a choice of law dispute apparently exists is the third-party claim against Tanner for aiding and abetting.

[7] In the March, 2009, Summary Judgment Opinion, the Court applied Ohio, not California, law to the bad faith tort claims then under consideration in the Ohio-venued cases.

5

took place in California . . . ." (02-16000, Doc. 1708, at 15). Royal argues that, since Tanner was the sole principal of the Guardian Entities, the relevant California contacts noted by the Court in the Lead Opinion were in fact contacts by Tanner. Royal contends that it premises its aiding and abetting allegations against Tanner on conduct by Tanner in California. However, although Royal alleges generally that Tanner "knew" of CMC's fraudulent misrepresentations, and "participated" in the fraudulent actions of its principals, Royal fails to identify any specific aiding and abetting conduct by Tanner that occurred in California.

Royal argues that, in any event, Ohio tort law governing its claim for aiding and abetting does not differ from California law. Royal asserts that, under either Ohio or California law, it would be required to prove fraudulent inducement by a preponderance of the evidence. *See, e.g., Liodas v. Sahadi*, 19 Cal. 3d 278, 289 (1977); Ohio Jury Instructions 443.01. Further, Royal contends, in both Ohio and California, proof of an aiding and abetting claim requires Royal to demonstrate an underlying wrongful act. *See, e.g., Saunders v. Superior Court*, 27 Cal. App. 4th 832, 845-46 (2d Dist. 1994); *Kelley v. Buckley*, 950 N.E.2d 997, 1016 (Ohio Ct. App. 2011).

Initially, the Court rejects Royal's assertion that the Court's prior application of California law to contract claims in this action establishes the governing law in these cases for all purposes. Rather, Ohio choice of law rules[8] require the court to conduct a distinct choice of law analysis with respect to each claim. As Tanner points out, the Court, conducting separate choice-of-law analyses for tort claims in various cases, recognized this principle in its March, 2009, Summary Judgment Opinion. As stated in that Opinion, the choice of law analysis of a tort claim differs from that of a contract claim.

The March, 2009, Summary Judgment Opinion summarized Ohio tort choice of law

---

[8] In deciding conflict of law questions in diversity of citizenship cases, a federal court generally follows the choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).

principles:

> When conducting choice of law analysis in a tort action, Ohio courts give significant weight to the location of the injury, but do not apply that factor exclusively. *See Morgan v. Biro Mfg. Co.*, 15 Ohio St. 3d 339, 341 (1984)("traditional rule of *lex loci delicti* is still viable in Ohio, but is no longer used to automatically determine the prevailing state law. . . ."). Ohio has adopted the principles of the Restatement (Second) of Conflicts of Law, sections 146, 145 and 6, for resolving choice of law issues in tort cases. *See Morgan*, 15 Ohio St. 3d at 342. Initially, section 146 creates a presumption that the law of the place of the injury controls, unless another jurisdiction has a more significant relationship to the lawsuit. *See Burns v. Prudential Sec., Inc.,* 167 Ohio App. 3d 809, 841 (3d Dist. 2006); *see also* Restatement of the Law, 2d, Conflict of Laws, § 146. In order to determine which jurisdiction bears the most significant relationship to the lawsuit, an Ohio court considers the principles set forth in section 145. *See Burns*, 167 Ohio App. 3d at 841.
>
> Pursuant to section 145, the factors to be considered in a choice of law analysis include "(1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under section 6 which the court may deem relevant to the litigation. All of these factors are to be evaluated according to their relative importance to the case. . . ." *See Morgan*, 15 Ohio St. 3d at 342; *see also* Restatement of the Law, 2d, Conflict of Laws, § 145. Section 6 of the Restatement provides the following additional factors relevant to the choice of the applicable law: "(a) the needs of the interstate and international systems[;] (b) the relevant policies of the forum[;] (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue[;] (d) the protection of justified expectations[;] (e) the basic policies underlying the particular field of law[;] (f) certainty, predictability and uniformity of result[;] and (g) ease in the determination and application of law to be applied. . . ." Restatement of the Law, 2d, Conflict of Laws, § 6.

March, 2009, Summary Judgment Opinion, 02-16000, Doc. 2214, at 18-19.

In determining the proper governing law for Royal's third-party aiding and abetting claim against Tanner, the Court applies the Restatement principles outlined above.

As Tanner points out, Royal is a North Carolina corporation, and presumably suffered any alleged injury in North Carolina.  North Carolina has no other connection to this dispute, however, and no party urges here that North Carolina law should apply.  Accordingly, the Restatement's presumption in favor of applying the law of the place of the injury does not control here, and the first Restatement factor carries no weight in the analysis.

The Court then looks to the second Restatement factor, which focuses on the location of the conduct allegedly causing the harm.  Royal's briefing provides little detail regarding the location of the conduct it attributes to Tanner, alleging vaguely that Tanner "knew" and "was aware" of fraudulent misrepresentations by CMC, and/or that he otherwise participated in CMC's fraud.  Royal's Answer to Plaintiff's Second Amended Complaint, Counterclaim and Defenses and Supplemental Third Party Complaint (02-16012, Doc. 94)("Supplemental Third Party Complaint"), however, provides more specificity as to the conduct alleged against Tanner in connection with Royal's aiding and abetting claim.

Paragraph 21 of the Supplemental Third Party Complaint alleges that, in February 2001, Tanner received a package, which described the CMC program as a Ponzi scheme, and revealed the role of A&M and Michael Anthony in the alleged scam.  Royal alleges that Tanner disclosed the information contained in the package only to Anthony, an alleged participant in the scheme, and did not disclose it to Royal.  Although the Supplemental Third Party Complaint is silent as to where this alleged conduct by Tanner occurred, all parties apparently agree that Tanner was a resident of Ohio in February, 2001.  It appears, therefore, that Tanner's conduct in receiving the derogatory information about CMC, and failing to disclose that information to Royal, would have occurred in Ohio.  The second Restatement factor, accordingly, supports the application of Ohio law to Royal's third-party claim.

The third factor considers the residence or place of business of the parties. As previously noted, Tanner resided in Ohio during all relevant time periods. Royal is a North Carolina corporation, and no party resides in California. Thus, this factor also weighs in favor of the application of Ohio law.

The fourth factor is the single factor that may weigh in favor of the application of California law. As noted in the Lead Opinion (02-16000, Doc. 1708) and the March, 2009, Summary Judgment Opinion (02-16000, Doc. 2214), multiple contacts relevant to negotiation and issuance of the lease bonds occurred between Tanner (on behalf of the Guardian Entities) and the Sureties in California. In light of those contacts, California may well have been the center of the parties' contractual relationship.

As Tanner points out, however, he is not a party to any contract with the Sureties, and Royal's aiding and abetting claim does not arise from the actions undertaken by Tanner in connection with the negotiation or issuance of the lease bonds. Rather, Royal alleges that Tanner had continuing knowledge of fraudulent misrepresentations and omissions by CMC, which he failed to disclose to Royal. Presumably, such failure to disclose would have occurred wherever Tanner was located during the relevant time period. The parties apparently agree that Tanner was primarily located in Ohio. Moreover, the single specific act which Royal alleges—Tanner's failure to disclose information contained in a package received in February, 2001—appears to have occurred in Ohio. On balance, these facts compel a finding that Ohio law governs the determination of this claim.

This conclusion flows from an analysis of the Restatement factors set forth above, and there are no countervailing policy considerations that would undermine this result. As Royal is not a California citizen, California can have no particular interest in this dispute, and the Court

9

can discern no California policy that would be contravened by the application here of Ohio law.

In any event, in light of the parties' proposed jury instructions and supporting authority, no meaningful difference exists between California and Ohio law *vis-a-vis* Royal's aiding and abetting claim against Tanner.

In California, a person may be liable as an aider and abettor "if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person . . . ." *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1144 (4th Dist. 2005). Ohio law imposes liability for aiding and abetting "if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself . . . ." *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 533 (6th Cir. 2000), *citing* Restatement (2d) of Torts, § 876(b).

Given the similarity between these two standards, the Court doubts that the choice of law determinations in this Opinion will materially impact the outcome of the upcoming trial proceedings. Having nonetheless applied Ohio tort choice of law standards, I conclude that Ohio law properly governs Royal's third-party claim against Tanner. Royal's Choice of Law Motion is granted in part and denied in part.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED THAT Royal Indemnity's motion re. choice of law be, and the same hereby is granted in part and denied in part as provided herein.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

88951-1

11