UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

CadleRock Joint Venture, L.P.,

                      Plaintiff

-vs-

Royal Indemnity Company,

                      Defendant

Case No. 02-16012, 02-16019 and 02-16022

Order

      The above-referenced cases were part of a multidistrict litigation proceeding consolidated before this Court for pretrial purposes pursuant to 28 U.S.C. § 1407.  These three cases are scheduled for consolidated jury trial proceedings commencing on February 23, 2012. *See* Trial Order issued November 23, 2011, 02-16012, Doc. 113; Minute Order dated February 17, 2012. The Trial Order required the parties to file any motions in limine on or before January 5, 2012.[1]

      These actions arise from lease bonds issued by Royal to Commercial Money Center, Inc. ("CMC"), relating to equipment leases originated by CMC.  CadleRock, the plaintiff in these actions, has succeeded to CMC's interests in the lease bonds through a series of assignments.  As the current obligee, CadleRock seeks to recover against Royal on the lease bonds.

      Royal has denied liability to CadleRock on the lease bonds, and has asserted an affirmative defense based upon alleged fraudulent material misrepresentations and concealment of facts by CMC and its principals.  Royal argues that CMC's fraud renders the lease bonds void,

---

[1] Due to a typographical error, the Trial Order actually provided that the date for filing motions in limine was January 15, 2012.  However, the Court stated the correct date during a telephone conference on the record on November 21, 2011.  All parties filed motions in limine on January 5, 2012.

1

and seeks rescission of its bonds.[2]

Familiarity with the complex factual background of these cases is assumed. For detailed factual background, the Court refers the reader to the two bench trial opinions previously issued in these and related cases. (02-16000, Doc. 2459; 02-16014, Doc. 131)(collectively, the "Bench Trial Opinions").[3]

These actions are presently before the Court upon the motion of Royal Indemnity Company ("Royal") for an Order precluding CadleRock Joint Venture, L.P. ("CadleRock") and Blaine Tanner ("Tanner") from introducing evidence at trial, or referring in opening or closing statements, to the conduct of other sureties, other investors, and other investigators in transactions not at issue in these cases. (02-16012, Doc. 172)("Royal Motion in Limine 6"). For the reasons set forth herein, the Royal Motion in Limine 6 is granted in part and denied in part. While most of the evidentiary determinations that Royal requests are premature at this stage, Royal is free to present objections at trial, in the context of specific evidentiary proffers by CadleRock.

**DISCUSSION**

Royal Motion in Limine 6 was filed on February 7, 2012, several weeks after this Court's deadline for the filing of motions in limine. According to Royal, the basis for the filing of this motion became clear only after February 3, 2012, when CadleRock submitted its proposed jury

---

[2] Royal has asserted counterclaims for rescission and recovery of certain payments made under reservation of rights. Royal also has a third-party claim against Blaine Tanner for aiding and abetting the fraud of CMC. That claim, for which Royal is also the plaintiff and bears the burden of proof, is largely coextensive with Royal's affirmative defense of fraud in the inducement.

[3] Where not defined herein, capitalized terms used in this Opinion have the meanings ascribed to them in the Bench Trial Opinions, as applicable.

instructions, exhibits and deposition designations.[4] Those pretrial filings, Royal contends, reveal that CadleRock's proposed proof extends far beyond the boundaries of relevant evidence, to include (1) statements by CMC to sureties, investors, and investigators not party to this action; (2) evidence as to what type of due diligence was undertaken by other sureties and investors; and (3) stipulations, court orders and a jury verdict from other cases, involving sureties and banks not party to this action.[5]

Royal asserts that all of this evidence is irrelevant to this trial, since it sheds no light on the representations made to Royal, the truth or falsity of those representations, and/or the reasonableness of Royal's reliance. Royal argues that permitting the introduction of evidence relating to separate parties and separate transactions will confuse the jury, divert the focus of the trial from Royal's fraudulent inducement defense, and thereby prejudice Royal's position.

Among the items of evidence challenged by Royal are witnesses and exhibits relating to transactions between CMC and other sureties (specifically, ACE and Safeco); or CMC and other investors (specifically, Riverway Bank and NetBank). Royal points out that CadleRock has designated five witnesses to testify via video deposition as to "Lease Bonds Issued by Other Insurers Prior to November 2000". CadleRock Proposed Exhibit List, 02-16012, Doc. 163, at 3. Royal also notes that CadleRock has designated testimony and evidence related to an investigation conducted by the Office of Thrift Supervision ("OTS"), which investigated CMC as part of its investigation of NetBank. Royal asserts that none of this evidence was disclosed to

---

[4] Third-party defendant Blaine Tanner has joined in the designations of witnesses and exhibits made by CadleRock (02-16012, Doc. 164), although Tanner filed separate proposed jury instructions. (02-16012, Doc. 169).

[5] The witnesses Royal seeks to exclude as part of Motion in Limine 6 are listed in Exhibit A to the Motion. (02-16012, Doc. 173-1). Exhibit A lists witnesses Gariel Burchett, Tony Lane, John Phillips, James Schrader, Steve Snyder, and Michael Huhn. Each of the first five listed witnesses is an employee or former employee of a bank or surety not party to the transactions in these cases. The last witness, Mr. Huhn, is an expert witness retained by Safeco. The exhibits that Royal seeks to exclude are identified as part of its objections to the proffered exhibits of CadleRock (Doc. 192).

it until discovery was conducted in this MDL proceeding, and thus that this evidence could not have been relevant to the claim that CMC fraudulently induced Royal to enter into the lease bond transactions.

The essence of Royal's objection to this evidence is its contention that statements made by CMC to other parties, or investigations conducted by other parties, can be relevant only to the extent they bear on the issue of whether CMC <u>fraudulently induced Royal</u> to enter into the lease bond contracts—*i.e.*, by demonstrating falsity of CMC's representations to Royal, or otherwise pertaining to an element of Royal's affirmative defense. Royal asserts that CadleRock's proffered evidence goes to none of those issues, and simply is immaterial.

Royal argues that, even if CMC made substantially similar representations both to Royal and other sureties, there were significant differences in what was said and when it was said. Issues of timing, Royal asserts, are particularly important, since statements made by CMC may have been true at some points in time, and false at others. In any event, Royal contends, questions of reliance must be determined based upon each party's "own intelligence and information," and thus the behavior of other parties cannot be relevant to the inquiry. Royal cites various cases for this proposition, including *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1240 (1995); and *Gray v. Don Miller & Assocs., Inc.*, 35 Cal. 3d 498, 503 (1984). Finally, Royal contends, permitting CadleRock to introduce such a broad range of evidence will unnecessarily complicate these trial proceedings, resulting in a "mini-trial" on each of multiple similar transactions.

Royal also objects to the introduction, during trial in these cases, of court documents from related cases involving different parties. CadleRock's proffered exhibits include (1) the complaints of four banks against Illinois Union Insurance Company of America ("Illinois

4

Union"); (2) this Court's Order entering Judgment against Illinois Union; and (3) a stipulation of facts, trial transcript, and the completed special jury verdict form from *FDIC, as Receiver of NetBank v. Safeco Insurance Company of America*, a trial that took place in November and December 2011 in the District of Nevada.

Particularly with respect to the Illinois Union case, Royal argues that this Court's prior opinions have specifically recognized the material factual differences between Illinois Union's insurance policies and the lease bonds issued by Royal. *See, e.g.,* Illinois Union Opinion, 02-16000, Doc. 1709.  Similarly, with respect to the FDIC case, Royal argues that material factual differences exist with respect to (1) the information provided to Safeco; and (2) the time at which such information was provided.  Moreover, Royal notes, the FDIC case was governed by Nevada law, which applies a different burden of proof than does California.  Since a jury is likely to place undue weight on prior judicial decisions and a prior jury verdict, Royal argues that introduction of these court documents will result in jury confusion and inevitable prejudice.

In its memorandum in opposition (02-16012, Doc. 187), CadleRock argues that Royal's motion is "ironic," since Royal seeks to exclude precisely the same type of evidence that Royal has proffered in support of its own fraudulent inducement defense.  CadleRock spends a significant portion of its brief contesting various aspects of Royal's proffered evidence, which it contends is broad-ranging, and irrelevant to the issue of alleged fraudulent inducement by CMC on the Royal bonds.

CadleRock further asserts that, to the extent the Court permits Royal to introduce evidence regarding transactions not at issue in this case, CadleRock is entitled to introduce evidence regarding those same transactions in rebuttal to Royal's proof.  CadleRock contends that, since Royal intends to present evidence that CMC misled it regarding the condition and

5

performance of non-Royal lease pools, CadleRock is entitled to present evidence bearing on the actual condition of those lease pools. Similarly, insofar as Royal alleges that some of the non-Royal leases were fictitious, non-funded leases, CadleRock argues that it is entitled to present evidence to demonstrate that the leases in question actually were valid.

With respect to the proffered testimony from other banks and surety companies, CadleRock asserts that it proposes to introduce testimony from individuals with personal knowledge of the performance of CMC's earlier lease pools, as well as CMC's management of those pools. Since Royal alleges false statements by CMC with respect to these topics, CadleRock argues, it is entitled to introduce testimony bearing on the accuracy and completeness of CMC's representations.

CadleRock contends that evidence of investigations of CMC conducted by other institutions is particularly relevant, because that evidence will demonstrate that the statements made to Royal were not actually false, and that CMC was not a Ponzi scheme during the time period prior to issuance of the Royal bonds. According to CadleRock, the testimony of Safeco representatives is crucial, because Royal asserts that it relied on its knowledge that Safeco had conducted due diligence on CMC prior to the issuance of the Royal bonds. CadleRock seeks to introduce the results of a Safeco audit of CMC performed in June 2000, to refute Royal's claim of justifiable reliance and to demonstrate that CMC was not a Ponzi scheme at that time. Similarly, CadleRock claims that the results of two Riverway Bank investigations, conducted in March 1999 and February 2000, are relevant to rebut Royal's claim that CMC was a Ponzi scheme prior to the issuance of its bonds.

CadleRock argues that evidence of the investigation conducted by OTS in December 2000 is relevant to the issue of CMC's intent. CadleRock seeks to introduce evidence that CMC

voluntarily disclosed its true financial condition, and the true condition of its lease pools, to NetBank. According to CadleRock, CMC's willingness to disclose this information voluntarily is relevant to the issue of justifiable reliance, since it demonstrates that Royal could have learned the truth about the CMC lease pool program if it had conducted proper due diligence.

With respect to the pleadings, stipulations and court judgments from related cases, CadleRock argues that such evidence should be admitted in the event that the Court permits the introduction of evidence regarding the criminal convictions of the CMC principals. If the Court allows Royal to introduce the terms of the Restitution Order to demonstrate the existence of fraudulent, unfunded leases, CadleRock asserts, then CadleRock also should be permitted to rely on court documents from related cases to show that CMC did not in fact create fictitious leases prior to the issuance of the Royal lease bonds.

Finally, CadleRock argues that the scope of the evidence that it will present in rebuttal will be dictated by the scope of the fraud evidence that the Court permits in support of Royal's affirmative defense. Until the Court has determined the exact nature and extent of proof that it will permit regarding Royal's fraud defense, CadleRock contends, Royal Motion in Limine 6 is premature.

In Royal's reply memorandum of law (02-16012, Doc. 194), Royal disputes the nature of CadleRock's rebuttal evidence, arguing that such evidence does not bear on any of the elements of Royal's affirmative defense. Royal first reiterates its argument that reasonable reliance is a subjective inquiry, and thus contends that any negligence by Royal in failing to discover CMC's misstatements is immaterial.[6]

Royal then asserts that, based upon CadleRock's description of its planned use of its

---

[6] Royal also cites several cases in support of the proposition that, due to the intentional nature of CMC's misrepresentations, any negligence by Royal in not discovering the falsity of the statements cannot be held against it. *See, e.g., Seeger v. Odell*, 18 Cal. 2d 409, 414 (1941); *Alliance Mortg. Co.*, 900 P.2d at 609.

other proffered evidence, such evidence can have no bearing on Royal's fraudulent inducement defense.  Royal contends that the proffered testimony of Safeco and other entity representatives will not actually bear on the truth or falsity of CMC's representations; rather, that evidence will provide no more than the subjective assessment of Safeco, Illinois Union or some other entity.

With respect to evidence relating to the OTS investigation, Royal argues that what CMC voluntarily told an investigating arm of the federal government, with subpoena authority, is dramatically different than what it would have told Royal if asked for the same information. Thus, Royal urges, the suggestion that the information disclosed to the OTS was readily available to Royal is speculative.  Moreover, Royal asserts, introducing the results of the OTS investigation is again improper, since OTS's subjective conclusions are irrelevant to demonstrating Royal's reasonable reliance.

With respect to CadleRock's proffered documents from other court cases, Royal essentially reiterates its prior arguments as to (1) the vastly different facts in those cases; and (2) the procedural impropriety of admitting documents from separate proceedings, in which none of these parties were involved.

As a final point, Royal raises separate arguments relating to the testimony of Michael Huhn, who was previously retained (and withdrawn) as an expert for Royal, and who remains as a testifying expert for Safeco.  According to Royal, Mr. Huhn was previously deposed as an expert witness, not a fact witness.  Royal thus argues that Mr. Huhn's testimony should be precluded on the basis set forth in the Court's February 15, 2012 Opinion granting Royal's Motion to Preclude Expert Testimony (02-16012, Doc. 181).

Initially, the Court has issued its Order (02-16012, Doc. 185) denying CadleRock's Motion in Limine, and has declined to restrict Royal's permissible areas of inquiry in the manner

urged by CadleRock. As set forth in that Order, however, Royal will be permitted to introduce evidence relating to other lease pools, other investors, and other sureties only insofar as such evidence pertains to an essential element of Royal's fraudulent inducement defense. In other words, Royal may offer such evidence to show an explicit misrepresentation by CMC on which it relied, or a material nondisclosure, but such evidence will not be admissible to show tangential matters such as (1) mismanagement and operational incompetence; or (2) a "pattern" of bad behavior by CMC. As also explained in the Court's Order on CadleRock's Motion in Limine, determinations of the relevance of these types of evidence must be made in context, in connection with a specific evidentiary proffer. Thus, in the present evidentiary vacuum, the Court declined to exclude any of the categories of evidence identified by CadleRock.

Here, similarly, the Court is confronted with Royal's motion to exclude broad categories of proposed proof in the absence of any evidentiary context. While the documents and testimony identified by CadleRock as "rebuttal" evidence are broad—and the Court has no doubt that at least some of them are immaterial to the issues presented—the Court cannot determine the admissibility of this evidence, on a global basis, outside of the trial context. As previously noted, the Court has denied CadleRock's motion in limine, and thus the scope and range of the proof that will ultimately be permitted to Royal remain unclear. To the extent Royal introduces evidence as to alleged false statements, or material omissions, made by CMC, CadleRock certainly is entitled to introduce evidence to rebut Royal's evidence as to the elements of its case—*i.e.*, the falsity of the statements, or Royal's justifiable reliance thereon.

All parties are cautioned, however, that the Court intends to limit the proof in this case strictly to the elements of Royal's fraudulent inducement defense. To the extent any party seeks to offer evidence relating to lease pools and transactions not specifically at issue in these cases,

that party bears the burden of demonstrating the relevance of such evidence.  Thus, with respect to the testimony of representatives of Safeco, Illinois Union, and other non-party entities (or other evidence pertaining to the conduct of those entities), the Court will examine the nature of the proffered testimony in context to determine its specific relevance.  To the extent such testimony bears on the truth or falsity of a particular representation by CMC, CadleRock is entitled to introduce such testimony as it pertains to that specific element of Royal's affirmative defense.  Insofar, however, as CadleRock merely seeks to introduce testimony as to the conduct of other entities in order to suggest that (1) Royal should be charged with any information those other entities acquired; or (2) the conduct of those entities should establish a standard for Royal's conduct, use of evidence for those purposes is improper and will not be permitted.

Particularly with respect to the proposed introduction of orders, stipulations and other documents from other judicial proceedings, the parties are cautioned that such evidence will rarely be relevant to these proceedings, and will require a specific showing of materiality.  The Court has stated this principle in previous orders and in conferences with the parties, and intends to adhere to it throughout these proceedings.  Again, however, the rulings requested by Royal are premature, and are deferred for determination at the trial stage.

With respect to the testimony of Mr. Huhn, it appears that the issue presented by this testimony is identical to that resolved by the Court in its February 15, 2012 Opinion granting Royal's Motion to Preclude Expert Testimony (02-16012, Doc. 181).  Accordingly, for the reasons set forth in the Court's February 15, 2012 Opinion, Royal's motion to exclude the testimony of Mr. Huhn is <u>granted</u>.

Royal Motion in Limine 6 is granted in part and denied in part, as set forth herein.

## CONCLUSION

For the reasons set forth herein, it is hereby

ORDERED THAT Royal Motion in Limine 6 (02-16012, Doc. 172) be, and the same hereby is, granted in part and denied in part, as set forth herein.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge